# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Kevin Brunson, Eunice Caro, and Clifton Spann, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No.: 2:07-3186-PMD |
| v. | ) ) | |
| Louisiana-Pacific Corporation and ABT Building Products Corporation, a/k/a ABTCO, | ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |

This matter is before the court upon Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. This court previously certified a similar class in a lawsuit against Defendants, except that class was limited to members residing in Charleston County. *Thomas v. Louisiana-Pacific Corporation*, 246 F.R.D. 505 (D.S.C. 2007). This action seeks to certify a putative class comprised of members with the same claims as those presented in *Thomas*, but who live in certain South Carolina counties other than Charleston. For the reasons set forth herein, the court grants Plaintiffs' motion.

## BACKGROUND

Named Plaintiff Kevin Brunson owns a home in Berkeley County, and named Plaintiffs Eunice Caro and Clifton Spann each own a home in Beaufort County. Plaintiffs allege their homes were constructed with a wood exterior trim product, known as "TrimBoard," which was designed, manufactured, sold, and distributed by Defendants "for use as fascia, soffit, corner board, window trim, door trim and general exterior use on homes, apartments, condominiums, buildings and other structures." (Am. Compl. ¶ 12.) According to Plaintiffs, Defendants

"represented and marketed their TrimBoard product as being a low maintenance product that would save on painting costs and [was] superior to real wood trim products." (Am. Compl. ¶ 13.) Even though Defendants are alleged to hold themselves out as "being knowledgeable in the design and manufacture of exterior building products and as being providers of quality building products," (Am. Compl. ¶ 11), Plaintiffs allege that TrimBoard "is defective and fails to perform as intended because it prematurely deteriorates, rots, swells, buckles, splits, checks, cracks, delaminates, absorbs water, w[ar]ps, and/or bulges under normal conditions and exposure; causes consequential water and structural damage; and promotes the growth of health-threatening mold, mildew, fungi, termites and other insects in the structures on which it is installed." (Am. Compl. ¶ 14.) Plaintiffs further allege that Defendants' failure to label TrimBoard with any serial number or stamp to identify the manufacturer, combined with their knowledge that most end-users will not buy TrimBoard directly from them, constitutes an attempt to avoid warranty claims. (Am. Compl. ¶¶ 19–20.) Plaintiffs thus bring this action against Defendants, asserting the following causes of action: (1) breach of express warranty; and (2) breach of implied warranties of merchantability and fitness for particular purpose. (Am. Compl. ¶¶ 30–39.)

Based on these allegations, Plaintiffs filed a motion for class certification, asking the court to certify the class of

> all persons, firms, corporations, and other entities who own homes, apartments, condominiums, buildings and other structures in the State of South Carolina within the [Federal Emergency Management Agency's] "Designated Hurricane-Susceptible Region," excluding Charleston County, South Carolina, on which Defendants' TrimBoard product is installed, excluding any structure owned by any federal, state or local government, and any structures owned by Defendants or any of their subsidiaries, affiliates or employees.

(Mem. in Supp. at 7.) Plaintiffs seek a class designation as an opt-out class.

## ANALYSIS

Federal Rule of Civil Procedure 23(a) provides that one or more members of a class may sue as representative parties on behalf of all only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Every class action must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation, with "the final three requirements of [the rule] 'tend[ing] to merge,' [so that] commonality and typicality '[serve] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) and *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157, n.13 (1982)).

In addition to satisfying the conditions enumerated in Rule 23(a), Plaintiffs must also demonstrate that the putative class satisfies one of the three sub-parts of Rule 23(b). In this case, Plaintiffs invoke subsection (b)(3), which permits a class action if

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). Plaintiffs carry the burden of establishing each of these requirements for a class action. *See, e.g.*, *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) ("[I]t is the plaintiff who bears the burden of showing that the class *does comply* with Rule 23.") (emphasis in original). At this stage, the class representatives need not establish its case on the merits; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974); *Stastny v. Southern Bell Tel. & Tel. Co.*, 628 F.2d 267, 275 (4th Cir. 1980), nevertheless, some preliminary inquiry into the merits may be necessary for an intelligent determination of whether to certify the class. *See Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312–13 (4th Cir. 1978). Questions regarding the certification of a class action are left to the sound discretion of the district court, and any such decision by the court will only be reversed upon a showing of abuse of that discretion. *Stott v. Haworth*, 916 F.2d 134, 139 (4th Cir. 1990).

### A. <u>Numerosity of the Parties</u>

Plaintiffs must first demonstrate that the purported class is so large that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "There is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied. The issue is one primarily for the District Court, to be resolved in light of the facts and circumstances of the particular case." *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978) (finding no error in the district court's determination that the numerosity requirement was not satisfied in a discrimination case where there were sixty-seven black employees, only eight of which were qualified for promotion, and there were twenty-five promotions during the time period in question). While there does not appear to be a specific number above which numerosity will be satisfied and below which numerosity will not be satisfied, "it is well settled that one or two will not meet the numerosity test." *Brown v. Eckerd Drugs, Inc.*, 669 F.2d 913, 917 (4th Cir. 1981).

In *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993), the Fourth Circuit affirmed the district court's approval of a class with 480 potential class members, stating this number "would easily satisfy the numerosity requirement." *Central Wesleyan*, 6 F.3d at 183. Furthermore, the United States District Court for the District of South Carolina found that because "a lawsuit with potentially one hundred and eighty plaintiffs presents logistical problems that make the practicality of permissive joinder dubious," class treatment "would streamline the lawsuit" and be "a much more practical legal vehicle" for the suit. *Bates v. Tenco Servs., Inc.*, 132 F.R.D. 160, 163 (D.S.C. 1990).

Plaintiffs assert they meet the numerosity requirement because TrimBoard has been installed on more than 1,000 homes in the State of South Carolina within FEMA's Designated Hurricane-Susceptible Region, excluding Charleston County. (Mem. in Supp. at 10–11.) Although Plaintiffs argue that Defendants admit in their response to requests for admissions to receiving more than 800 warranty claims in South Carolina relating to the TrimBoard product, they clearly have misrepresented Defendants' response. This mistake likely resulted from Plaintiffs use of the identical argument it made in *Thomas*. In Defendants' responses to Plaintiff's requests for admission provided to the court, the following exchange appears:

> 8. Admit that since the year 2000, LP [(Louisiana-Pacific and ABTCO)] has received in excess of 300 warranty claims for the TrimBoard product which have originated within the FEMA's "Designated Hurricane-Susceptible Region" excluding Charleston County.
>
> **Response: LP objects to this request on the grounds that it is ambiguous and imposes an obligation on LP beyond those authorized by the South Carolina Rules of Civil Procedure. LP has produced its warranty claims files for the entire state of South Carolina, including those areas within FEMA's "Designated Hurricane-Susceptible Region."**

(Mot. for Class Certification Ex. C. ¶ 8.) Plaintiffs further assert that more than 400,000 square feet of TrimBoard has been sold by Defendants to distributors and builders in South Carolina and

that Defendants' expert, Mark S. Kellogg, attests to the fact that numerous homes with the TrimBoard product exist within the proposed class definition. Defendants, on the other hand, argue the number of potential claimants is not nearly as high as the Plaintiffs suggest. Their warranty claims analyst attested to the fact that, through August of 2009, their office has processed TrimBoard warranty claims for 361 houses or buildings in South Carolina outside of Charleston County. (Tilley Aff. ¶ 5.) Of these 361 structures, 347 exist in Beaufort and Berkeley counties, and 11 exist in other counties sought to be included in the class.

The court finds Plaintiffs have satisfied the numerosity requirement of Rule 23(a). Although Defendants contest numerosity, the numerosity requirement is satisfied, even assuming the accuracy of Defendants' estimates. In his affidavit, Defendants' expert materials engineer, Mark Kellogg, states that he has searched for TrimBoard in eight of the 27 counties included in Plaintiffs' proposed class and has found 20 homes with the product in Berkeley County, 50 in Beaufort County, and four total homes in Lexington, Richland, and Jasper Counties, which have not already been involved in a lawsuit. The court finds this number, in addition to the number of homes with the TrimBoard product that Plaintiff claims exist in the remaining counties, satisfies the requirement of numerosity. *See Ganesh, LLC v. Computer Learning Ctrs., Inc.*, 183 F.R.D. 487, 489 (E.D. Va. 1998) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972), for the proposition that "[a]s few as forty investors can [satisfy the numerosity requirement] in an appropriate case"). *Cf. Roman v. ESB, Inc.*, 550 F.2d 1343, 1349 (4th Cir. 1976) (affirming the district court's refusal to certify class when 44 were already named plaintiffs and class certification would add eleven persons).

### B. Commonality and Predominance of Factual and Legal Issues, and Superiority of Class Action

Rule 23(a)(2) requires "questions of law or fact common to the class." "The common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (citing *Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990)). Commonality "requires little more than the presence of common questions of law and fact." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (citing *Lienhart*, 255 F.3d at 146). As this court noted in *Parks Automotive Group, Inc. v. General Motors Corp.*,

> A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1763 (3d ed. 2005). A question is not common, by contrast, if its resolution "turns on a consideration of the individual circumstances of each class member." *See id.* The commonality test is qualitative, not quantitative. 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions,* § 3.10 at 3-50 (3d ed.1992). There need be only a single question of law or fact common to all members of the class. *Id.* However, the existence of any common question is insufficient because "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. General Motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998) (en banc). "What [the court looks] for is a common issue the resolution of which will advance the litigation." *Id.*

237 F.R.D. 567, 570 (D.S.C. 2006). Plaintiffs assert they have satisfied this requirement:

> The present action concerns and is based upon a course of conduct by the Defendants involving the development, manufacture, marketing, and distribution of TrimBoard. The predominant common legal theory shared by all putative class members is that TrimBoard is a product with fatal manufacturing defects, and thus, the express and implied warranties have been breached. The Plaintiffs allege liability on the basis of two narrowly tailored claims: (1) breach of express warranty; and (2) breach of implied warranties of merchantability and fitness for a particular purpose. These theories necessarily involve common questions of both law and fact, to wit:
>
> a.     Whether TrimBoard is unsuitable for use as an exterior product;
>
> b.     Whether TrimBoard is defective from the point of manufacture;

  c.  Whether Defendants breached the warranties provided to South Carolina residents within FEMA's "Designated Hurricane-Susceptible Region," excluding Charleston County; and

  d.  Whether the Plaintiffs are entitled to pre-judgment interest, attorney's fees and costs.

(Mem. in Supp. at 12–13.) According to Plaintiffs, one common dominate issue exists in this case: "the unsuitability of TrimBoard for exterior use." (*Id.* at 14.)

  Defendants, on the other hand, argue Plaintiffs have not satisfied the commonality requirement because overwhelming individual questions exist. Instead of addressing the issue of commonality alone, Defendants address commonality within the predominance context. Defendants do so because in *Lienhart*, the Fourth Circuit noted, "In a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart*, 255 F.3d at 147 n.4 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)).

> Framed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit may nevertheless be convenient and desirable. To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.

*Amchem Prods.,* 521 U.S. at 615.

> To satisfy the predominance requirement, plaintiffs must show that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and to satisfy the superiority requirement, they must show that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The predominance requirement is far more demanding than Rule 23(a)'s commonality requirement and tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.

*Gunnells*, 348 F.3d at 459 (Niemeyer, J., concurring in part and dissenting in part) (internal quotation marks and citations omitted).

Defendants argue that the facts of this case present an overwhelming amount of individual questions, which defeats any claim of commonality made by Plaintiffs. As to Plaintiffs' claims for breach of an express warranty, Defendant believes each class member will have to show proof of what express warranty they rely on to make their case, as several different versions of the 10-year Limited Warranty were issued over the years, and the January 2005 warranty differs from the others in "potentially significant ways." (Defs. Resp. at 2.) Defendants also argue that each class member will have to prove the product used on their home is their product, and if so proven, that it was damaged within the warranty period and not damaged by an excluded cause. Excluded causes include a failure to follow installation instructions, failure to maintain the product, acts of God, fire, and misuse. Lastly, Defendants contend that their affirmative defenses will require individual analysis of each class members' situation. Because of these individual inquiries, Defendants do not believe the court can find that the commonality, predominance, and superiority requirements are satisfied to certify the Plaintiffs' proposed class.

In reply, Plaintiffs counter by arguing that Defendants make the same arguments this court already rejected in *Thomas*. They contend that the assertion common among every purported class member, which predominates over this suit, is that Defendants' TrimBoard product proved unfit as a trim product within 10 years from its installation, contrary to what was warranted, and that following the installation and maintenance instructions would not cure these alleged defects.

After considering the parties' arguments, the court finds that Plaintiffs have satisfied both the commonality requirement of Rule 23(a)(2) and the predominance and superiority

requirements of Rule 23(b)(3). Plaintiffs bring two causes of action: (a) breach of express warranty and (b) breach of implied warranties of merchantability and fitness for particular purpose. In order to establish a cause of action for breach of express warranty, a plaintiff must prove (1) the existence of an express warranty, (2) breach of an express warranty, and (3) damages proximately caused by the breach. *See Cox House Moving, Inc. v. Ford Motor Co.*, No. 7:06-1218-HMH, 2006 WL 2303182, *4 (D.S.C. Aug. 8, 2006) (citing *Besse v. Gen. Motors Corp.*, 317 F. Supp. 2d 646, 654 n.7 (D.S.C. 2004)); *see also* S.C. CODE § 36-2-313. To recover for breach of the implied warranty of merchantability, a plaintiff must prove (1) a merchant sold goods; (2) the goods were not "merchantable" at the time of sale; (3) the plaintiff or his property were injured by such goods; (4) the defect or other condition amounting to a breach of the implied warranty of merchantability proximately caused the injury; and (5) the plaintiff so injured gave timely notice to the seller. *Seaside Resorts, Inc. v. Club Car, Inc.*, 308 S.C. 47, 52-53, 416 S.E.2d 655, 659-60 (Ct. App. 1992) (applying North Carolina law).[1]

Although claims based on disparate representations can destroy commonality amongst putative class members' claims for breach of an express warranty, it does not appear that the representations made by Defendants can be qualified as such. After reviewing the language of the different warranties provided the court, they all warrant TrimBoard against the same things: delamination, checking, splitting, cracking and chipping of the basic substrate for a period of ten years from the date of installation under normal conditions of use and exposure. Moreover, the warranties provide compensation to the "owner" of the TrimBoard, and one even goes so far as to warrant the product to "the original purchaser and to any subsequent owners of a structure on

---

[1] Although the court in *Seaside Resorts* was applying North Carolina law, South Carolina's statute concerning the implied warranty of merchantability is almost identical to the North Carolina statute. *See* S.C. CODE § 36-2-314.

which . . . [TrimBoard] . . . is installed . . . ." (Mem. in Supp. Ex. F.) Therefore, each class member will not have to show proof that the warranty formed a basis of his or her bargain to own the TrimBoard product. Also, while, the different versions of the warranty may provide different forms of relief to each end-user of Defendants' product, individual damage determinations do not necessarily destroy the commonality, typicality, or predominance of putative class members' claims.

The court also disagrees with Defendants' assertion that the common question posited by Plaintiffs is merely a "red herring." While Plaintiffs craft their arguments using language commonly associated with a products liability claim, proof of a defect will further advance the breach of warranty claims of the absent class members, as Plaintiffs' theory is that TrimBoard is defective and completely unsuitable as an exterior trim product contrary to Defendants' warranties. In making this finding, the court considered the following factors listed in Rule 23(b)(3): (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. With respect to the first factor, generally speaking, the members of the class do not appear interested in individually controlling separate actions, and the claims do not generally seem large enough to warrant such individualized attention. Like in *Thomas*, the court also finds the third factor favors class certification. Plaintiff claims TrimBoard is defective, even if it is installed and maintained properly. Concentrating this litigation will provide the class members who might not otherwise seek a remedy due to the hassle and expense of litigation with a remedy, and having one forum will protect Defendants

from inconsistent judgments. Lastly, the court must consider the difficulties in managing a class action. In this case, the potential for difficulty seems to arise in the context of a damages calculation; however, this court has already worked with Defendants in devising a way to handle a similar class's claims in *Thomas*. Therefore, the court finds the class manageable. Plaintiffs may or may not ultimately be able to prove their causes of action, but the facts they attempt to prove will be largely uniform for all class members. While some individual issues may exist, the common issue in this case is dispositive and overshadows any other issues. Plaintiffs have met the commonality requirement.

## C. **Typicality of Claims and Defenses of Class Representatives**

Rule 23(a)(3) provides that the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (citation omitted). The typicality requirement blends with the commonality and adequacy of representation requirements. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). Typicality does not require perfect alignment of the plaintiffs' and class members' claims; however, class certification is not appropriate "when the variation in claims strikes at the heart of the respective causes of action." *Id.* at 467. "Thus, it follows that the appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Id.*

Plaintiffs argue typicality is satisfied because their claims "arise out of a common course of conduct on the part of the Defendants with regard to their development, manufacture, marketing, and distribution of TrimBoard. The Defendants' breach of both express and implied

warranties is the result of TrimBoard not being fit for use as an exterior trim product." (Mem. in Supp. at 17.) Furthermore, Plaintiffs argue that the potential need for individualized damage determinations does not preclude certification and that Defendants' argument that TrimBoard was not the proximate cause of Plaintiffs' damages favors certification. (Mem. in Supp. at 18.) Defendants do not appear to dispute Plaintiffs' assertion that typicality exists between their claims and the absent class members' claims. Because the proposed class members' claims arise from the same alleged course of conduct by Defendants, the facts on which Plaintiffs will rely to prove their claims will also prove the claims of the absent class members. Moreover, the same considerations the court noted in the "commonality" discussion above apply to this issue as well. Therefore, the court finds that Plaintiffs have met the typicality requirement.

### D. **Adequacy of Representation**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." "The principal factor in determining the adequacy of class representatives is whether the plaintiffs have the ability and commitment to prosecute the action vigorously. This inquiry involves two issues: (i) whether plaintiffs have any interest antagonistic to the rest of the class, and (ii) whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation." *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 329–30 (D.S.C. 1991) (internal quotation marks and citations omitted). "The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary." *Id.* at 330–31 (citing *Falcon v. Gen. Tel. Co.*, 626 F.2d 369, 376 n.8 (5th Cir. 1980), *vacated on other grounds*, 450 U.S. 1036 (1981)).

Plaintiffs argue these requirements are satisfied because "Defendants cannot point to any material conflict between the named Plaintiffsjbo and the class they seeks to represent." (Mem.

in Supp. at 19.) Plaintiffs also point to their declarations, in which they aver to aggressively pursue the action on behalf of themselves and other class members. (Mem. in Supp. Exs. J, K, and L.) Plaintiffs' counsel also assert that they will vigorously prosecute this action on behalf of the putative class, as they have already done in other cases involving TrimBoard, including *Thomas*. Defendants do not seem to contest Plaintiffs' assertions. Defendants do contend that the named Plaintiffs may not have an incentive to protect the interests of class members who purchased TrimBoard under the 2006 Limited Warranty because that warranty specifically states that TrimBoard should not be used in FEMA's designated hurricane-susceptible region. The court disagrees, and because Defendants have not pointed to any conflict between Plaintiffs and the named class and because "courts generally hold that the employment of competent counsel assures vigorous prosecution," *S.C. Nat'l Bank*, 139 F.R.D. at 331, the court finds the requirements of Rule 23(a)(4) satisfied.

## CONCLUSION

Finding the factors in Rule 23(b)(3) favor class certification, and finding the requirements of Rule 23(a) satisfied, the court **GRANTS** Plaintiffs' motion for class certification. Pursuant to Rule 23(c)(1)(B), the court certifies the class as defined by Plaintiffs and as that definition is contained in this order. The class claims are those causes of action in Plaintiffs' amended complaint, as identified in this order. Pursuant to Rule 23(g), the court appoints Paul A. Dominick of Nexsen Pruet, LLC and Justin O. Lucey of Justin O'Toole Lucey, PA. as class counsel.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**February 8, 2010**
**Charleston, SC**